IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEPHEN B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22CV1026 |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephen B. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on July 5, 2019, alleging a disability onset date of August 1, 2017. (Tr. at 20, 214-20.)[2] Plaintiff's application was denied initially (Tr. 73-84, 99-102) and upon reconsideration (Tr. at 85-98, 106-13). Thereafter, Plaintiff

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 114-15.) On February 1, 2022, Plaintiff, along with his non-attorney representative, attended the subsequent video hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 20, 36-72.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30-31), and on September 29, 2022, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

2

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date, August 1, 2017. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 22.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Degenerative Disc Disease (DDD) of the Cervical and Lumbar Spine; Lumbar Radiculopathy; Mononeuropathy of the Bilateral, Upper Extremities and the Bilateral, Lower Extremities (Right>Left); Migraine Headaches and Obesity[.]

(Tr. at 22.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 23-25.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform sedentary work with the following, non-exertional limitations:

> [Plaintiff] can frequently push/pull with the bilateral, lower extremities. [He] can frequently push/pull with the bilateral, upper extremities. [He] can

5

occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds. [He] can frequently balance and stoop and can occasionally crouch and crawl. [He] can frequently reach in all directions, including overhead, with the bilateral, upper extremities. [He] can work in an environment with a moderate noise level. [He] can occasionally work in direct sunlight. [He] can occasionally work in and around vibration, as well as in and around dust, odors, fumes and pulmonary irritants. [He] can never work at unprotected heights and can occasionally work around moving, mechanical parts. [He] requires the option to sit/stand, every fifteen minutes, while remaining on task.

(Tr. at 25.) At step four of the analysis, the ALJ found, based on the above RFC and the vocational expert's testimony, that Plaintiff was unable to perform any of his past relevant work. (Tr. at 29.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 29-30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now contends that the ALJ erred in two respects when assessing Plaintiff's RFC. Specifically, he argues that the ALJ (1) failed to "explain why she did not include an [RFC] accommodation for leg elevation or reclining" and (2) failed to "account for Plaintiff's time off task and the absences he would incur . . . due to his recurrent migraine headaches." (Pl.'s Br. [Doc. #8] at 1.) In both instances, Plaintiff chiefly argues that the ALJ erred in finding Plaintiff's statements regarding the limiting effects of his impairments less than fully consistent with the medical evidence and other evidence of record.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess

6

how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Commissioner, Social Security Administration, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4-5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95; see also Hines, 453 F.3d at 564-65; Shelley C. v. Comm'r of Soc. Sec. Admin., 61 F.4th 341, 361-62 (4th Cir. 2023) ("The Fourth Circuit has long held that while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity. Indeed, because pain is not readily susceptible of objective proof, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." (internal brackets, ellipsis, emphasis, and quotations omitted)).

In the present case, at the administrative hearing, Plaintiff testified that he stopped working as a town maintenance water operator in 2017. The job involved heavy lifting and driving machinery, and Plaintiff explained that, because of his neuropathy, he "kept falling when [he] would get off of the machinery" and "it was just too difficult for [him] to continue." (Tr. at 48-49.) When asked why he could not work, Plaintiff testified that his back pain from his pars interarticularis fracture required him "to take frequent breaks for a few minutes up to a couple of hours" and that when he worked, he also "had to take a few days off a month, two to three days off, for migraines." (Tr. at 50, 59.) Plaintiff further testified that his neuropathy causes his legs to go numb, that it is very painful to sit for long periods, and that, because of his back injury, he "[has] to elevate [his] legs waist high, almost in a laying position," to alleviate pain. (Tr. at 51.) If he sits with his feet straight down, it hurts his back and causes his legs to go numb, so he has to "sit almost in a laying position with [his] feet straight out." (Tr. at 54.) Plaintiff testified that he spends his time either laying on the sofa or in bed. (Tr. at 54-55.) Plaintiff's neuropathy is worse in his right leg, and it is more likely than his left to "give out" while he is standing or walking. (Tr. at 56.) In terms of positional changes, Plaintiff testified that he could only sit for "[p]robably 10 minutes, 15 minutes at the most" and that "[i]t would be very painful if it [was] longer than that." (Tr. at 60.) He explained that, during the 30-minute video hearing, he had his "legs stretched out straight in from of [him] on the couch" and was leaning on the couch arm, "almost in a laying position." (Tr. at 60-61.)

Plaintiff also testified that his neurologist prescribed Tramadol for his pain, including migraine pain. (Tr. at 51.) He reported that his migraines occur "every couple of weeks" on average, from "one a week to maybe one every two weeks" and that they "last approximately

8

two to three days." (Tr. at 51, 58.) When he has a migraine, it affects his vision, hearing, and balance. (Tr. at 51.) He experiences dizziness, blurred vision, and sensitivity to light and sound. (Tr. at 58.) Loud noises, direct sunlight, and positional changes, such as bending over, can trigger Plaintiff's migraines. (Tr. at 61-62.) He testified that when he experiences one of these headaches, he must stay home, take medications such as Tramadol, Excedrin, and Advil, and sleep as much as possible over the two-to-three-day period until the headache subsides. (Tr. at 58.) When he was still working, he would have to take two to three days off of work each month for migraines. (Tr. at 50.) He also testified that he had been referred to a neurologist for his migraines, but that he could not afford to go (Tr. at 61.)

Notably, the ALJ's decision contains no account of Plaintiff's subjective complaints as presented through hearing testimony and no discussion of his daily activities. Instead, in undertaking the two-step analysis of Plaintiff's symptoms, the ALJ simply found:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements, including his testimony at the hearing about the intensity, persistence and limiting effects of his symptoms, <u>they are inconsistent because the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations</u> resulting from his above stated severe impairments.

(Tr. at 26 (emphasis added).) Thus, by the ALJ's own explanation, the only reason for rejecting Plaintiff's testimony was the lack of objective findings to provide support for his allegations

9

of disabling symptoms, but without any discussion of his testimony and his reported pain-related symptoms.

The ALJ does summarize Plaintiff's treatment notes, and in doing so he does recount some of Plaintiff's subjective complaints to his doctors reflected in the treatment notes. (Tr. at 26-27.) These treatment notes include an MRI reflecting "a disc protrusion at C4-C5, indenting the ventral thecal sac," an EMG showing "electrodiagnostic evidence of multiple mononeuropathy involving the upper limbs and right lower extremity, suggestive of sensory motor axonal and demyelinating peripheral neuropathy involving the distal limbs," and an x-ray showing degenerative disc disease and a significant amount of facet joint arthritis in the lumbar spine. (Tr. at 26; see also Tr. at 309, 315, 338-39, 361.) The treatment notes also reflect Plaintiff's ongoing history of migraines with associated nausea, and his treating physician's notations that the migraines were impacting his functioning, with multiple failed treatments in the past. (Tr. at 27, 337, 355-56, 365, 370, 376, 381, 385, 441, 486, 496, 515-16, 519.) The ALJ also acknowledged that the treatment records reflect occasions of lumbar and cervical tenderness and Plaintiff's appearing uncomfortable with guarded movements. (Tr. at 27, 486-89, 518, 522-23,.) However, the ALJ's summary of the medical records also repeatedly concludes that "objective signs upon examination . . . were normal" (Tr. at 26), "signs were again normal at examination" (Tr. at 26), "objective signs were unremarkable" (Tr. at 27), "objective signs were normal" (Tr. at 27), "[o]nce again, the objective signs were normal," (Tr. at 27), and "other objective signs were normal" (Tr. at 27).[5]

---

[5] These objective findings relate to Plaintiff's "gait, station, range of motion, reflexes, and sensation." (Tr. at 26.)

10

The ALJ then includes a summary of medical opinions and prior administrative findings, but the ALJ did not fully accept the opinions of the state agency physicians based on the need to consider "subsequent evidence presented at the hearing," although there is no discussion of the subsequent testimony presented at the hearing. The ALJ also found "somewhat persuasive" an opinion from Plaintiff's treating providers that Plaintiff was unable to sit for prolonged periods (Tr. at 28, 523), but the ALJ discounted that opinion by again noting that Plaintiff's "physical examinations were routinely within normal limits." (Tr. at 28.)

From this discussion, the only apparent reason the ALJ gave for discounting Plaintiff's symptoms is a lack of objective evidence. As noted above, the ALJ generally asserts that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical and other evidence in the record for the reasons explained in this decision." (Tr. at 26.) She then states that Plaintiff's "statements, including his testimony at the hearing about the intensity, persistence and limiting effects of his symptoms . . . are inconsistent because the <u>objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations resulting from his . . . severe impairments.</u>" (Tr. at 26 (emphasis added).) Having made this assertion, the ALJ was required under the relevant regulations, rulings, and case law to make further findings and consider the record as a whole. See SSR 16-3p, 2017 WL 5180304, at *5 (providing that the SSA "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual"); see also 20 C.F.R. § 416.929(c)(1)-(2). Here, the ALJ failed to follow this directive, and instead

11

provided no discussion or analysis for discounting Plaintiff's testimony, other than the conclusory references to objective findings and normal objective signs. She failed to consider the entire case record, and instead disregarded Plaintiff's statements about the intensity, persistence, and limiting effects of symptoms solely by reference to a lack of objective evidence, without providing any other reasons for deviating from Plaintiff's statements regarding the impact of his symptoms on his ability to work.

Moreover, although the ALJ failed to directly discuss any of Plaintiff's testimony in her decision, the RFC assessment clearly accounts for some of Plaintiff's alleged limitations. For example, the ALJ limited Plaintiff to occasional work in direct sunlight and provided the option to alternate between sitting and standing every fifteen minutes while remaining on task. (See Tr. at 25.) However, the ALJ's analysis of the evidence provides no discernable basis for accepting these restrictions while omitting others. Notably, concerning Plaintiff's migraines, the ALJ points to no evidence (1) that Plaintiff's headache symptoms were adequately controlled through treatment or (2) addressing Plaintiff's assertion that, in the course of his previous work, he "had to take a few days off a month" due to migraines. (Tr. at 50.) While this degree of absenteeism was tolerated in Plaintiff's previous job, the ALJ determined that Plaintiff could no longer perform this work (Tr. at 29), and the vocational expert testified that missing even two days per month would preclude other jobs available in the national economy (Tr. at 67). See Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023) (holding that "the ALJ erred by not making specific finding regarding how often [the claimant] would be absent from work due to the frequency and severity of her headaches" where the vocational expert testified that more than one absence per month would preclude

12

full time employment and claimant reported having headaches "about once a week" despite treatment).

Ultimately, the ALJ was required to consider the entire record, rather than objective findings alone, when discounting Plaintiff's statements regarding his pain, and the ALJ was required to sufficiently explain the basis for her findings in the decision itself. See SSR 16-3p, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.") As set out above, the ALJ failed to provide such an explanation in the present case, and the Court cannot attempt to rely on reasoning that the ALJ did not provide.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Plaintiff's claim. Defendant's Dispositive Brief [Doc. #10] is DENIED, and Plaintiff's Dispositive Brief [Doc. #8] is GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, his Motion is DENIED.

This, the 5th day of March, 2024.

                                                    /s/ Joi Elizabeth Peake
                                                   United States Magistrate Judge